UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

ABRAHAM HAMRA,                                            Civ. No. 2:25-cv-4774

        Plaintiff,

  -against-

AL JAZEERA MEDIA NETWORK, a foreign
company,
and   AL JAZEERA INTERNATIONAL (USA) LLC,

        Defendants.

-------------------------------------------------------------------- X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**


Robert Garson
**GS2 LAW PLLC**
20801 Biscayne Blvd., Suite 50
6 Aventura, Florida 33180
Tel.: (305) 780-5212
rg@gs2law.com
*Attorneys for Plaintiff Abraham Hamra*


Dated: February 19, 2026




i

**TABLE OF CONTENTS**

FACTUAL BACKGROUND..................................................................................................5

ARGUMENT ....................................................................................................................7

    I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ...........................................7

        A. AJI Is The Alter Ego of AJMN and Both Are Subject to Jurisdiction ...................................7

        B. Personal Jurisdiction Is Proper Under CPLR § 302(a)(1).......................................................10

        B. Even If Plaintiff Were a Limited-Purpose Public Figure, Actual Malice Is Adequately Alleged .........................................................................................................................................15

        C. The August 25th Video Is Defamatory .................................................................................18

        D. Plaintiff Adequately Pleads Harm .......................................................................................21

        E. The August 25th Video Sufficiently Identifies Plaintiff .......................................................22

    III. PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF SHOULD PROCEED .......................................23

    IV. DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES....................................................24

        A. New York's Anti-SLAPP Fee-Shifting Provisions Are Inapplicable in Federal Court...........24

        B. Even If the Fee Provisions Applied, This Action Has Substantial Basis ............................28

        C. The Request Is Premature .....................................................................................................28

CONCLUSION ...............................................................................................................29



**TABLE OF AUTHORITIES**

**CASES**

*APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)..........................................................................9

*Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 381 (1995) ........................................................21

*Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) .............................................................................1

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ..................................................................1

*Berk v. Choy*, 607 U.S. ___ (2026)...........................................................................25, 27, 28

*Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015) ...................................................16, 19

*Biro v. Condé Nast*, 963 F. Supp. 2d 255, 275 .......................................................................15

*Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024) ......................................20, 27, 28

*Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 231 (2d Dep't 1981) ..............................23

*Calder v. Jones*, 465 U.S. 783, 789-90, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984) .........................11

*Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022)...............................................................26

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993) ............8

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) ......................................18

*Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)..........................................16

*Church of Scientology*, 238 F.3d at 173 .........................................................................................19

*Coritsidis v. Khal Bnei Torah of Mount Ivy*, 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024) .....................26

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) .................................................................13

*Gottwald v. Sebert*, 193 A.D.3d 573, 574 (1st Dep't 2021)..........................................................14

*Gross v. Cantor*, 270 N.Y. 93, 96 (1936).....................................................................................24

*Holder v. Bobb*, 797 F. Supp. 3d 134 (E.D.N.Y. 2025)................................................................15

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)..............................11

*Kesner v. Buhl*, 590 F. Supp. 3d 680 (S.D.N.Y. 2022),.................................................................26

*Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191, 192 (1st Dep't 1998) ...............................................15

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) ..........................................................................25

*Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984)......................................14

*Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)........................................................................20

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) ............................................................16

*National Academy of Television Arts and Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F. Supp. 3d 408 (S.D.N.Y. 2021) ...............................................................................................26

*Oxman v. Diana*, 241 A.D.3d 835, 836 (2d Dep't 2025).............................................................20

*Prince v. Intercept*, 634 F. Supp. 3d 114 (S.D.N.Y. 2022) ..........................................................26

*Project Veritas v. CNN, Inc.*, 591 F. Supp. 3d 1322, 1334 (N.D. Ga. 2022) ..................................21

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) ............25

*Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc)..............................................18



*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) ..................................................................................................................8

*Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979)....................................14

**STATUTES**

Civil Rights Law § 70-a .................................................................................27, 29

**RULES**

CPLR § 302(a)(1) .................................................................................................11

CPLR § 302(a)(1). .................................................................................................11

Fed. R. Civ. Proc. 12 and 56 ..............................................................................25

Fed. R. Civ. Proc. Rule 8 .................................................................................1, 25



**PRELIMINARY STATEMENT**

Plaintiff Abraham Hamra respectfully submits this memorandum of law in opposition to Defendants Al Jazeera Media Network ("AJMN") and Al Jazeera International (USA) LLC's ("AJI") (collectively, "Defendants") motion to dismiss the Amended Complaint (ECF 8 "Amended Complaint" or "FAC") . Defendants' motion should be denied in its entirety because Plaintiff has adequately pleaded personal jurisdiction over both Defendants and has stated a plausible claim for defamation.

Notably, at the January 13, 2026 conference, the Court observed that the Complaint appears to survive a motion to dismiss. The Court's preliminary assessment was well-founded: Plaintiff's pleading satisfies the applicable legal standards under Fed. R. Civ. Proc. Rule 8 , *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) *and Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), and Defendants' motion fails to demonstrate otherwise. Rather than engage with the four corners of the pleading, Defendants now seek to overwhelm the Court with extrinsic evidence that falls outside the scope of proper consideration on a Rule 12(b)(6) motion.

On August 25, 2025, Defendants published a defamatory video on their official Instagram account (@aljazeeraenglish), which has over 6.4 million followers, falsely accusing Plaintiff of being "reportedly paid" by the Israeli government to visit Gaza aid sites. This accusation is categorically false. Plaintiff has never received any payment, compensation, or financial incentive from the Israeli government or any affiliated entity for visiting aid sites in Gaza. The visit was undertaken independently, in his personal capacity, on his own dime, as an advocate for his

GS2LAW

1

community and to bear witness against misinformation[1].

Defendants now seek to escape accountability for their defamatory publication by raising several arguments that are either legally flawed or factually unsupported. First, Defendants argue that this Court lacks personal jurisdiction because the defamatory content was not "created, researched, written, developed, or produced in New York." (Defendants Memorandum of Law In Support of Their Motion to Dismiss "Def. Brief" p. 15) However, Defendants ignore that AJI maintains substantial operations in the United States, including content production and distribution targeted at American audiences, and that Defendants purposefully direct content toward U.S. audiences, including in New York, through multiple streaming platforms and active social media presence.

Second, Defendants argue at Def. Brief p. 18 that Plaintiff is a "limited-purpose public figure" who must allege actual malice but has failed to do so. This argument fails for two reasons: (1) Plaintiff is not a public figure, he is a private individual who practices immigration law and uses social media to share his personal heritage and advocacy, and  (2) even if Plaintiff were deemed a limited-purpose public figure, the Amended Complaint adequately alleges actual malice by demonstrating that Defendants published the defamatory statement with knowledge of its falsity or reckless disregard for the truth.

Third, Defendants contend that the August 25th Video was not defamatory, did not specifically identify Plaintiff, and that Plaintiff failed to plead harm. Each of these arguments

---

[1] The irony is not lost that Defendants are one of the biggest disseminators of misinformation concerning Israel. See https://honestreporting.com/evaporating-palestinians-al-jazeeras-unfounded-claim-vanishes-under-scrutiny/
"Despite its global footprint, the Qatari-run Al Jazeera is not a credible media outlet. The anti-Israel propaganda that it continuously pumps out is hardly surprising. But the outlet's consistent publishing of explicitly false information and blatantly made-up absurd stories is nonetheless shocking"

 GS2LAW

2

ignores the plain content of the video, which directly displayed Plaintiff's image alongside text stating that "[t]hese influencers were reportedly paid to visit Gaza's GHF aid sites," falsely accusing a licensed attorney of accepting foreign government compensation, an accusation that also implies criminal conduct under the Foreign Agents Registration Act ("FARA") and injures Plaintiff in his profession generally.

Finally, Defendants' request for attorneys' fees under New York's anti-SLAPP statute is premature and meritless. This action has a substantial basis in fact and law, and Plaintiff's claims should proceed to discovery.

**Defendants' Improper Reliance on Extrinsic Evidence**

Defendants' motion is replete with materials that fall outside the four corners of the Amended Complaint. On a motion to dismiss under Rule 12(b)(6), the Court may only consider extrinsic evidence that is (1) attached to the pleading, (2) incorporated by reference in the pleading, or (3) deemed integral to at least one claim in the pleading. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010)). As the Supreme Court recently reaffirmed in *Berk v. Choy*, 607 U.S. ___ (2026), Rule 12 provides "only one ground for dismissal based on the merits— 'failure to state a claim upon which relief can be granted,' Rule 12(b)(6)—and prohibit[s] courts from considering 'matters outside the pleadings' when evaluating whether a plaintiff has stated a claim."

Def. Brief at page 5 indulges in substantial post-hoc "whataboutery," marshaling news articles and other materials about Israeli government influencer programs that were not cited in, attached to, or integral to the Amended Complaint. Defendants may wish to seek to justify the



defamatory post after the event, but the relevant question at this stage is whether the post was truthful *at the time of publication* and what fact-checking processes Defendants employed *then*, not what highly compensated counsel at DLA Piper can cobble together *now* in defense of their clients. The proper vehicle for such an evidentiary showing, is summary judgment or likely before a jury, if deemed germane to the issue of falsity, not a motion to dismiss.

If the Court is inclined to consider Defendants' extraneous materials, then Plaintiff respectfully submits that full discovery should be permitted. The who, what, and when of the Al Jazeera Instagram account remains opaque, including which entity controls content decisions, who approved the defamatory post, and what (if any) factchecking was conducted before publication. Moreover, revelations continue to emerge that Al Jazeera journalists are operatives for designated terrorist organizations Hamas and Palestinian Islamic Jihad. See www.mediawatch.legal generally and a snapshot of the AJI journalists below:





Accordingly, the Court should view Defendants' assertions with considerable skepticism, especially given from whence they come and permit Plaintiff to explore through discovery whether a media organization with documented ties to terrorist operatives was acting as a neutral reporter, or deliberately seeking to harm Plaintiff.

**FACTUAL BACKGROUND**

Plaintiff Abraham Hamra is a United States citizen domiciled in Nassau County, New York. He is a partner at Cohen, Tucker & Ades P.C., a New York-based immigration law firm, where he specializes in providing personalized legal services to clients. Plaintiff is recognized as a New York Metro Rising Star by Super Lawyers and is fluent in English, Arabic, and Hebrew.

Plaintiff is also a Jewish refugee from Syria, born in Damascus. His family experienced the persecution faced by Jews in Arab countries, and his relative, Rabbi Avraham Hamra, served as the last Chief Rabbi of Syria and played a key role in aiding the community's escape in the 1990s. As a descendant of this resilient community, Plaintiff has dedicated himself to educating others about Jewish history in the Arab world, combating antisemitism, and advocating for coexistence. Defendant AJMN is a global media conglomerate headquartered in Doha, Qatar, that operates multiple channels, including Al Jazeera Arabic and Al Jazeera English, and distributes content worldwide via television, online platforms, and social media, including Instagram under the handle @aljazeeraenglish. Defendant AJI is a Delaware limited liability company and subsidiary of AJMN with its principal place of business in Washington, D.C., which serves as a hub for the network's U.S. operations, including content production and distribution targeted at American audiences.

 GS2LAW

5

Defendants have a documented history of anti-Semitic commentary and anti-Zionist bias. For example, in 2008, Defendants hosted an on-air birthday party for Samir Kuntar, a convicted terrorist who killed Israeli civilians. In 2017, Defendants retweeted an anti-Semitic meme on their English-language account. In 2019, Defendants' AJ+ channel produced a video denying and minimizing the Holocaust, claiming the number of Jewish victims was exaggerated to benefit Israel. Israeli forces have also uncovered documents revealing that several Al Jazeera journalists are operatives for Hamas and Palestinian Islamic Jihad.

On August 25, 2025, Defendants published a defamatory video post on their official Instagram account (@aljazeeraenglish) with over 6.4 million followers. The post included a video and text stating: "Videos show social media influencers who were invited by #Israel's government to tour #GHF aid sites in #Gaza, where the UN has declared a stage five famine." Accompanying the post was an image of Plaintiff standing alongside another individual near aid supplies, with overlaid text reading: "These influencers were reportedly paid to visit Gaza's GHF aid sites."

The post directly identifies Plaintiff as one of the "influencers" who was "reportedly paid" by the Israeli government, implying he accepted compensation to participate in a government-sponsored propaganda tour. This accusation is entirely false. Plaintiff has never received any payment from the Israeli government or any affiliated entity for visiting aid sites in Gaza. The visit was undertaken independently, on his own dime, as an advocate for his community.

The defamatory post cites no sources for the "reportedly paid" claim, and publicly available information about Plaintiff demonstrates he is an independent U.S. attorney with no financial ties to foreign governments. Defendants failed to conduct even basic factchecking, such as contacting Plaintiff for comment or verifying the allegation.

 GS2LAW

The defamatory statement constitutes libel per se under New York law because it also accuses Plaintiff of committing a serious crime, violating FARA by acting as an unregistered foreign agent for Israel, and tends to injure him generally in his profession as a lawyer. FARA requires individuals acting as agents of foreign principals to register with the U.S. Department of Justice, and failure to do so is a federal offense punishable by fines and imprisonment.

The post had garnered over 60,000 likes at the time of filing, had been viewed over 1.4 million times, and has received widespread engagement, amplifying the harm. As a result of Defendants' publication, Plaintiff has suffered reputational damage, including public ridicule, loss of client trust, diminished professional opportunities, and emotional distress. Plaintiff has also been subjected to threats, harassment, and calls for coordinated targeting of his social media accounts, creating real danger in the modern environment where social media outrage frequently escalates into physical threats.

<strong>ARGUMENT</strong>

**I. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

Defendants argue that this Court lacks personal jurisdiction because Plaintiff has not alleged that the defamatory content was "created, researched, written, developed, or produced in New York." This argument fails to account for the full scope of Defendants' contacts with New York and misapplies the applicable legal standards.

***A. AJI Is The Alter Ego of AJMN and Both Are Subject to Jurisdiction***

As a threshold matter, the Amended Complaint adequately alleges that AJI is the alter ego of AJMN, such that the contacts of one entity may be imputed to the other for purposes of personal jurisdiction. Under Second Circuit law, a court may pierce the corporate veil and impute



7

one entity's contacts to another where the entities fail to maintain proper corporate separateness and one entity dominates the other to the point that it is merely an instrumentality of the parent. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991); *see also Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).

The Amended Complaint alleges facts supporting an alter ego finding. AJI is described as a "subsidiary of AJMN"" that "serves as a hub for the network's U.S. operations, including content production and distribution targeted at American audiences." The defamatory video was posted on the @aljazeeraenglish Instagram account, an account that bears AJMN's brand name but distributes content to U.S. audiences, which is precisely AJI's alleged function. This overlap suggests that AJI may be nothing more than AJMN's domestic arm, operating without meaningful independence.

Courts in this Circuit have recognized that where a subsidiary  is a 'mere department' of its parent with personal jurisdiction over the subsidiary may be exercised based on the parent's contacts, and vice versa. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-21 (2d Cir. 1984). At a minimum, whether AJI and AJMN maintain genuine corporate separateness, or whether AJI is merely a conduit for AJMN's U.S. operations, is a factual question that cannot be resolved without discovery into the corporate relationship between these entities, including:

   i.    Whether AJI and AJMN share officers, directors, or employees;

  ii.    Whether AJMN controls AJI's day-to-day operations and content decisions;

 iii.    Whether AJI maintains separate books, records, and bank accounts;



iv.     Whether AJI is adequately capitalized or depends entirely on AJMN for funding;

v.     Whether AJI has independent decision-making authority over content distributed to U.S. audiences; and

vi.     Which entity controls the @aljazeeraenglish Instagram account and approved the defamatory post.

Plaintiff is entitled to jurisdictional discovery on these issues. *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("Where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). If discovery reveals that AJI lacks genuine independence from AJMN. that it is merely AJMN's "department" or instrumentality in the United States, then AJMN's worldwide contacts may be imputed to AJI for jurisdictional purposes, and AJI's U.S. presence may establish jurisdiction over AJMN.

Moreover, Defendant AJI is a Delaware limited liability company with substantial operations in the United States. While AJMN is headquartered in Qatar, AJI serves as a hub for the network's U.S. operations, including content production and distribution targeted at American audiences. The Amended Complaint alleges that AJI operates content production and distribution activities that extend to New York audiences through various platforms.

Defendants concede that AJMN "operates multiple channels . . . and distributes content worldwide via television, online platforms, and social media, including Instagram under the handle @aljazeeraenglish." Def, Brief p. 7. The allegedly defamatory video was posted on this very Instagram account. If AJI controls, operates, or participates in the management of this account, which can be established through discovery, then AJI is directly implicated in the publication of the defamatory content.

GS2LAW

9

Defendants' argument at Def. Brief p. 17 that the Amended Complaint fails to allege any facts or conduct directly attributable to AJI because the video was posted on Al Jazeera English's Instagram account is premature. The Amended Complaint alleges at FAC ¶16 that AJI "serves as a hub for the network's U.S. operations, including content production and distribution targeted at American audiences." At the motion to dismiss stage, the Court must accept these allegations as true. Discovery may reveal that AJI played a role in the creation, review, or publication of the defamatory content, or that AJI exercises control over content distributed to U.S. audiences.

Indeed, the very opacity of the relationship between AJMN and AJI underscores the need for discovery. Defendants cannot simultaneously claim that AJI is a separate entity with no involvement in the defamatory post while also refusing to disclose the corporate structure, decision-making processes, and operational relationships that would allow Plaintiff to test that assertion. As the Second Circuit was clear when it held "we believe the district court improperly denied plaintiffs the opportunity to engage in limited discovery on the question prior to dismissing" *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003), relying upon *Calder v. Jones*, 465 U.S. 783, 789-90, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984) (court may exercise personal jurisdiction over defendant consistent with due process when defendant is a primary participant in intentional wrongdoing -- albeit extra- territorially -- expressly directed at forum).

### B. Personal Jurisdiction Is Proper Under CPLR § 302(a)(1)

Defendants correctly note that New York courts apply a narrower standard for personal jurisdiction in defamation cases. However, the Amended Complaint adequately pleads facts supporting jurisdiction under CPLR § 302(a)(1).



10

The Amended Complaint at FAC ¶8, 9, 10 alleges that Defendants have substantial contacts with New York, including distributing content through Al Jazeera English and other channels to New York audiences via streaming platforms such as Sling TV, YouTube, Roku, Amazon Fire TV, and Apple TV. Defendants purposefully direct content toward U.S. audiences, including in New York, and maintain active social media presence on platforms like Instagram, where the defamatory post was published and accessible to New York residents.

Defendants' argument at Def. Brief p. 15 that the mere posting of defamatory material on a website accessible in New York does not constitute "transacting business" misses the point. The Amended Complaint alleges more than passive accessibility. Defendants operate an extensive distribution network specifically targeting U.S. audiences, including New York residents. Defendants maintain a physical presence in the United States through AJI, and the defamatory content was distributed in English through channels specifically designed to reach American audiences.

Furthermore, Defendants transact business in New York through their distribution agreements with U.S.-based streaming platforms and content partnerships with American media organizations. Defendants have acknowledged partnering "with prominent news organizations" and receiving praise "by U.S. officials across the political spectrum." Def Brief. P.7 fn6. These ongoing business relationships support a finding of personal jurisdiction under the transacting business prong.

### C. The "Something More" Standard Is Satisfied

Even under the "decidedly stricter test for defamation cases," personal jurisdiction is proper here because the defamatory content was not merely "projected into" New York, it was

 GS2LAW

11

specifically targeted at New York and caused injury here.

The "something more" standard requires that "at least part of the defamatory content was created, researched, written, developed, or produced in New York." While Defendants argue that the August 25th Video was created in Qatar, this self-assertion is not established in the pleadings and cannot be assumed at the motion to dismiss stage. Discovery may well reveal that AJI, operating in the United States, played a role in the creation, research, or development of the content.

Moreover, the defamatory content was specifically targeted at Plaintiff, a New York resident and attorney. The August 25th Video identified Plaintiff by name and image and accused him of accepting payments from a foreign government, an accusation that directly impacts his professional reputation in New York, where he practices law. The harm from the defamatory statement was specifically directed at New York because Plaintiff's legal practice and professional reputation are centered there.

The Amended Complaint also alleges that the defamatory statement caused tortious injury within New York by harming Plaintiff's reputation in his home state and professional community. These allegations, accepted as true at this stage, establish the required nexus between Defendants' conduct and New York.

At minimum, personal jurisdiction is a factual question that cannot be resolved on the pleadings alone. Plaintiff is entitled to jurisdictional discovery to establish the full extent of Defendants' contacts with New York and their role in creating and distributing the defamatory content.

 GS2LAW

## II. PLAINTIFF'S DEFAMATION CLAIM IS ADEQUATELY PLEADED

### A. Plaintiff Is a Private Figure, Not a Public Figure

Defendants' motion rests heavily on the assertion that Plaintiff is a "limited-purpose public figure" who must satisfy the heightened actual malice standard. This characterization is incorrect. Plaintiff is a private figure entitled to the lower negligence standard applicable to defamation claims.

A "limited-purpose public figure" is someone who "voluntarily injects himself into a particular public controversy and thereby becomes a public figure for a limited range of issues." *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). To establish limited-purpose public figure status, a defendant must demonstrate that a plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident; (2) voluntarily injected himself into a public controversy related to the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media. *See Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984).

Plaintiff does not satisfy these criteria. First, while Plaintiff maintains a social media presence, having a social media account does not automatically transform a private individual into a public figure. As the Court of Appeals has made clear, "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979); *see also Gottwald v. Sebert*, 193 A.D.3d 573, 574 (1st Dep't 2021) (same). Plaintiff is an immigration attorney who uses Instagram to share content in English and Arabic related to his heritage as a Syrian Jewish refugee, counter misinformation, and advocate against antisemitism.



This is personal expression, not an effort to become a public figure on matters of public controversy.

Second, Plaintiff did not voluntarily inject himself into the specific public controversy at issue the alleged payment of influencers by the Israeli government. Plaintiff visited Gaza aid sites independently and on his own expense. He was not a participant in the reported government-sponsored program. The defamatory accusation that he was "reportedly paid" is precisely what he denies and what this lawsuit challenges. A plaintiff does not become a public figure merely because a defendant defames him in connection with a public issue.

Third, Plaintiff has not assumed a "position of prominence" in the public controversy regarding Israeli government funding of influencers. Defendants point to news articles describing Plaintiff as an "influencer" and "activist for Israel," but these descriptions do not establish that Plaintiff is a public figure on the specific issue of government-sponsored propaganda tours. Critically, "in order to be considered a public controversy . . . the subject matter must be more than simply newsworthy . . . it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191, 192 (1st Dep't 1998). Courts have consistently distinguished between individuals who speak publicly on issues and those who have thrust themselves into the forefront of particular controversies. Plaintiff is the former, not the latter.

Fourth, Plaintiff does not enjoy the "regular and continuing access to the media" that characterizes public figures. While Plaintiff has appeared on podcasts and been mentioned in news articles, this level of media access is not comparable to that of true public figures who command media attention at will. As the Second Circuit has noted, the public figure standard is

 GS2LAW

14

reserved for those who enjoy "significantly greater access to the channels of effective communication than the average private person." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 275 Plaintiff, a private immigration attorney, does not meet this standard.

Defendants' reliance on *Holder v. Bobb*, 797 F. Supp. 3d 134 (E.D.N.Y. 2025), is misplaced. In *Holder*, the plaintiff was a self-described "social media personality" who used her platform to focus "on current affairs and entertainment." Here, Plaintiff is an attorney who uses social media to share his personal story and heritage. The two situations are distinguishable.

Even if the Court were to find that Plaintiff has some characteristics of a limited-purpose public figure, the Court should narrowly define the scope of any such status. Plaintiff did not inject himself into a controversy about whether influencers are paid by the Israeli government. He denies receiving any such payment. The defamatory accusation itself cannot be the basis for transforming Plaintiff into a public figure on that very issue.

### B. Even If Plaintiff Were a Limited-Purpose Public Figure, Actual Malice Is Adequately Alleged

Even assuming *arguendo* that Plaintiff is a limited-purpose public figure, the Amended Complaint adequately alleges actual malice. Actual malice requires that a statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Importantly, "resolution of the actual malice inquir[y] typically requires discovery," and plaintiffs may rely on circumstantial evidence to establish actual malice, as direct evidence is rarely available. *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001); *see also Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015)

 GS2LAW

("Although actual malice is subjective, a court typically will infer actual malice from objective facts.").

The Amended Complaint at FAC ¶58 alleges that Defendants "knew or recklessly disregarded the falsity of the statement." More specifically, the Amended Complaint alleges:

i.  The post cites no sources for the "reportedly paid" claim. (FAC ¶59) Defendants argue that the phrase "reportedly paid" references prior news reports, the August 25th Video does not identify any source, and Defendants have not established that any prior report specifically named Plaintiff as having received payment.

ii.  Publicly available information about Plaintiff demonstrates he is an independent U.S. attorney with no financial ties to foreign governments. (FAC ¶59) Defendants could have easily verified this information before publication.

iii.  Defendants failed to conduct even basic factchecking, such as contacting Plaintiff for comment or verifying the allegation. (FAC ¶60) As a major media network with substantial resources, Defendants had the means to verify the accuracy of their accusations but chose not to do so.

iv.  Defendants have a documented history of anti-Semitic commentary and anti-Zionist bias. (FAC ¶27) This pattern of bias supports an inference that Defendants acted with actual malice in targeting Plaintiff, who is a Jewish refugee and pro-Israel advocate.

Defendants at Def. Brief p. 26 argue that "failure to investigate before publishing . . . is not sufficient to establish reckless disregard." However, this principle does not apply where, as here, a defendant had obvious reasons to doubt the veracity of a statement or possessed information that should have put it on notice. As the Second Circuit has explained, although "a

publisher who does not already have 'obvious reasons to doubt' the accuracy of a story is not required to initiate an investigation that might plant such doubt[,] [o]nce doubt exists, the publisher must act reasonably in dispelling it." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013). Moreover, "evidence of an intent to avoid the truth [can be] sufficient to satisfy the [actual malice standard]." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 693 (1989); *see also Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022) (same).

Defendants published a specific accusation, that Plaintiff was "reportedly paid" without any evidence that Plaintiff, specifically, received payment. This is not a case of mere failure to investigate; it is a case of publishing a false accusation with no factual basis. Just as the use of "with the greatest respect" does not shield a lawyer from being berated by a judge, the use of a qualifier like "reportedly" does not insulate Defendants from liability, as actual malice can be inferred when a publication relies on unverified sources or when there are "obvious [specified] reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *see also Biro*, 807 F.3d at 546. This is especially the case when the publisher in this case has verifiable terrorist links.

Moreover, the allegations regarding Defendants' pattern of bias and history of publishing false content about Israel-related matters support an inference of actual malice. Actual malice "can be established through the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story [among] other circumstantial evidence." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000). Critically, "[e]vidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of



17

actual malice." *Id.* (citing *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc)).  Here, Defendants' documented history of anti-Semitic content, including Holocaust denial, celebration of terrorists, and ties to Hamas operatives, supports an inference that Defendants acted with reckless disregard for the truth in publishing defamatory content about a Jewish pro-Israel advocate.

Defendants' argument that the "gist" of the August 25th  Video was true because the Israeli government has acknowledged sponsoring influencer tours misses the point. The specific allegation at issue is that *Plaintiff* was "reportedly paid." The truth or falsity of whether *other* influencers were paid is irrelevant to whether the accusation against *Plaintiff* was false. Plaintiff alleges that he was not paid and that Defendants had no basis to include him in their accusation. At the motion to dismiss stage, Plaintiff need only plead facts that plausibly support an inference of actual malice. The Amended Complaint does so. As the Second Circuit has recognized, "[t]he hurdles to plausibly pleading actual malice, though significant given the First Amendment interests at stake, are by no means insurmountable." *Biro*, 807 F.3d at 545. Whether Defendants actually knew their statement was false or recklessly disregarded its falsity is a fact-intensive inquiry that cannot be resolved on a Rule 12(b)(6) motion. *See Church of Scientology*, 238 F.3d at 173 ("resolution of the actual malice inquir[y] typically requires discovery").

### C. The August 25th Video Is Defamatory

Defendants argue that the August 25th Video is not defamatory because: (1) it is substantially true; (2) it does not "rise to the necessary level of derogation"; and (3) it does not imply criminal conduct. Each of these arguments fails.



The statement is false as to Plaintiff. Defendants do not dispute that the August 25th Video accused Plaintiff of being "reportedly paid" to visit Gaza aid sites. Plaintiff alleges that this accusation is false as he was not paid. The question of whether the statement is true or false is a factual issue that cannot be resolved on a motion to dismiss.

Defendants' "substantial truth" argument relies on evidence that *other* influencers were paid by the Israeli government. But the defamatory accusation was directed at *Plaintiff*. It does not matter whether the Israeli government has paid other influencers if Plaintiff was not among them. The truth defense requires that the specific statement about Plaintiff be substantially true, not that some generalized version of the statement might be true as to other people.

The statement is defamatory per se**.** Under New York law, a statement is defamatory per se if it accuses a person of a crime or tends to injure the person in their trade, business, or profession. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *Oxman v. Diana*, 241 A.D.3d 835, 836 (2d Dep't 2025) ("A false statement constitutes defamation per se, inter alia, if it charges another with a serious crime or tends to injure another in their trade, business, or profession."); *Kasavana v. Vela*, 172 A.D.3d 1042, 1043 (2d Dep't 2019) (same). The accusation that Plaintiff was "reportedly paid" by a foreign government to promote its interests implies that Plaintiff violated FARA by acting as an unregistered foreign agent. FARA violations are federal crimes punishable by fines and imprisonment.

Moreover, the accusation directly injures Plaintiff in his profession as an attorney. Attorneys are hopefully held to the highest standards of integrity and independence. An accusation that an attorney accepted secret payments from a foreign government to advance that government's interests strikes at the core of professional ethics. Potential clients,

 GS2LAW

19

particularly in the immigration field, where FARA compliance is scrutinized, may avoid Plaintiff due to the false implication of foreign influence.

Defendants' reliance on *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024), is misplaced. In *Bobulinski*, the court found that an incorrect statement about the source of legal fee payments was not defamatory because the plaintiff's connections to the alleged source were already well known. Here, Plaintiff has no connections to Israeli government payment schemes, that is precisely the false accusation. Plaintiff is an independent attorney who visited Gaza on his own dime. The accusation that he was secretly paid by a foreign government is not a minor factual error about an already-known connection; it is a false accusation of hidden corruption.

The defamation-by-implication standard is satisfied. Defendants argue that Plaintiff's claim is a "defamation-by-implication" case requiring a "rigorous showing" that the statement can be reasonably read to impart a defamatory inference. Under New York law, defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 381 (1995); *see also Project Veritas v. CNN, Inc.*, 591 F. Supp. 3d 1322, 1334 (N.D. Ga. 2022) (applying New York law). The August 25th Video satisfies this standard. The video explicitly states that "[t]hese influencers were reportedly paid to visit Gaza's GHF aid sites" while displaying an image of Plaintiff. The reasonable inference is that Plaintiff was one of the influencers who was paid, an inference that the video was designed to create. This is not a case where Plaintiff is "asking the Court to take too many inferential jumps"; the defamatory meaning is plain from the face of the publication.



Defendants' post-hoc attempted justifications do not provide a "get out of jail free card." Defendants' motion at pages 11-12 explains that "certain influencers had been paid to participate" in Israeli government programs and then juxtaposes this claim with a video featuring Plaintiff in Gaza. Even more egregiously, Defendants reference content that Plaintiff has posted on his own social media, content created on his own time and at his own expense, as though this somehow justifies the defamatory accusation. It does not. The fact that Plaintiff independently advocates for causes he believes in does not make it true that he was paid to do so. To the contrary, falsely implicating Plaintiff as a "paid influencer" strikes at the very core of his credibility and undermines the pro bono nature of his passion and mission. Plaintiff's advocacy derives its moral force precisely from its independence, from the fact that he speaks as a Syrian Jewish refugee sharing his heritage and combating antisemitism, not as a compensated agent of any government. Defendants' false accusation transforms Plaintiff from an independent advocate into a mercenary shill, a characterization that is both defamatory and deeply injurious to his reputation.

### D. Plaintiff Adequately Pleads Harm

Defendants argue that Plaintiff fails to plead special damages as required for defamation claims. However, where a statement is defamatory per se, as here, special damages are presumed and need not be specifically pleaded.

The Amended Complaint alleges that the August 25th Video "accuses Plaintiff of a crime and injures him in his trade, business, or profession." Both categories constitute defamation per



se under New York law, and special damages are presumed.  Plaintiff is not required to provide a "specific accounting" of damages at the pleading stage.

Moreover, the Amended Complaint does allege specific harms: reputational damage, public ridicule, loss of client trust, diminished professional opportunities, emotional distress, threats, harassment, and calls for coordinated targeting of Plaintiff's social media accounts.  The post had been viewed over 1.4 million times and garnered over 60,000 likes, by the time of filing. These allegations are more than sufficient to establish harm at the pleading stage.

### E. The August 25th Video Sufficiently Identifies Plaintiff

Defendants argue at Def. Brief p. 32 that the August 25th Video does not specifically identify Plaintiff and therefore cannot support a defamation claim. This argument is frivolous.

The August 25th Video displays Plaintiff's image and first name while the text "These influencers were reportedly paid to visit Gaza's GHF aid sites" appears on screen. Critically, Defendants concede that Plaintiff's "image and first name briefly made its way into the August 25th Video." This concession is dispositive on the issue of identification. By admitting that Plaintiff was featured in the video, even "fleetingly," Defendants have effectively conceded that Plaintiff was identified in a publication accusing influencers of being paid by a foreign government. This transforms the identification issue from a question of liability into a question of damages. The duration or prominence of Plaintiff's appearance goes to the *extent* of harm suffered, not to whether Plaintiff was identified at all. Whether Plaintiff's Instagram handle was included is not even close to being dispositive of the identification question, it is simply one factor among many that a jury may consider in assessing damages.

 GS2LAW

22

Under New York law, a plaintiff need not be identified by full name to maintain a defamation claim. The test is whether a reasonable reader could have concluded that the articles were conveying facts about the plaintiff. *See Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 231 (2d Dep't 1981) (explaining that in group defamation cases, "[b]ecause the group is small and includes few individuals, reference to the individual plaintiff reasonably follows from the statement and the question of reference is left for the jury"). Here, Plaintiff's image was displayed while the defamatory accusation appeared on screen. Viewers of the video would reasonably understand that the accusation applied to the individuals shown, including Plaintiff. As the Court of Appeals has explained, "if the words may by any reasonable application, import a charge against several individuals, under some general description or general name, the plaintiff has the right to go on to trial, and it is for the jury to decide, whether the charge has the personal application averred by the plaintiff." *Gross v. Cantor*, 270 N.Y. 93, 96 (1936). The fact that other influencers were identified by full name and handle while Plaintiff was identified only by image and first name does not insulate Defendants from liability, it merely goes to the weight of the evidence, not the sufficiency of the pleading.

## III. PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF SHOULD PROCEED

Defendants argue that Plaintiff's claim for injunctive relief fails because he cannot succeed on the merits of his defamation claim. For the reasons stated above, Plaintiff has adequately pleaded a defamation claim, and his request for injunctive relief should proceed.

The Amended Complaint alleges that Defendants' continued publication of the defamatory statement subjects Plaintiff to ongoing irreparable harm, including reputational

 GS2LAW

injury, harassment, and threats to his safety. Plaintiff has no adequate remedy at law because damages cannot fully repair the loss of reputation, the chilling of professional opportunities, or the threat to his physical security. These allegations support a claim for injunctive relief at the pleading stage.

## IV. DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES

Defendants seek attorneys' fees under New York Civil Rights Law § 70-a, arguing that this action is a "SLAPP" suit without substantial basis in fact and law. This request should be denied for multiple independent reasons.

### A. New York's Anti-SLAPP Fee-Shifting Provisions Are Inapplicable in Federal Court

As a threshold matter, the procedural mechanisms of New York's anti-SLAPP statute, including the fee-shifting provisions tied to the "substantial basis" standard—cannot be applied in federal court. The Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. ___ (2026), confirms this conclusion. In *Berk*, the Court reaffirmed the framework for analyzing conflicts between state law and the Federal Rules of Civil Procedure: "We first ask whether the Federal Rule 'answers the question in dispute.' . . . If a Federal Rule answers the disputed question, it governs, unless it 'exceeds statutory authorization or Congress's rulemaking power.'" The Court emphasized that "the substantive nature of [a state] law, or its substantive purpose, makes no difference" to whether a valid Federal Rule displaces it.

Under this framework, as refined by the Supreme Court in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), federal courts must determine



24

whether a Federal Rule of Civil Procedure answers the same question as state law; if so, the Federal Rule governs.

The Second Circuit addressed this issue directly in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), holding as a matter of first impression that anti-SLAPP statutes are inapplicable in federal court because they "increase[] a plaintiff's burden to overcome pretrial dismissal, and thus conflict[] with Federal Rules of Civil Procedure 12 and 56." The court explained that Fed. R. Civ. Proc. 12 and 56 "establish[] the circumstances under which a court must dismiss a plaintiff's claim before trial," and anti-SLAPP motion procedures answer this same question differently.

*Berk v. Choy* reinforces this analysis. The Supreme Court held that Fed. R. Civ. Proc. 8 "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation" and establishes "'implicitly, but with unmistakable clarity,' . . . that evidence of the claim is not required." Fed. R. Civ. Proc. 12 "reinforces the point by providing only one ground for dismissal based on the merits—'failure to state a claim upon which relief can be granted,' Rule 12(b)(6)—and prohibiting courts from considering 'matters outside the pleadings' when evaluating whether a plaintiff has stated a claim." The Court explained that "the court instead asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face.'" New York's anti-SLAPP statute, by imposing a "substantial basis" standard that requires plaintiffs to demonstrate more than plausibility at the pleading stage, directly conflicts with this framework.

Federal courts within the Second Circuit have consistently applied this reasoning to New York's anti-SLAPP statute. In *National Academy of Television Arts and Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F. Supp. 3d 408 (S.D.N.Y. 2021), the court held that New York's anti-



SLAPP provisions "answer the same question" as Federal Rules 12 and 56 but apply different standards. The court explained that Rule 12(b)(6) requires only that complaints state "a claim to relief that is plausible on its face," while New York's anti-SLAPP statute imposes a heightened "substantial basis" standard.

In *Kesner v. Buhl*, 590 F. Supp. 3d 680 (S.D.N.Y. 2022), the court dismissed defendant's counterclaim for attorney fees under New York's anti-SLAPP statute, holding that "New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure." This reasoning has been adopted by multiple district courts within the Second Circuit. *See Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022); *Coritsidis v. Khal Bnei Torah of Mount Ivy*, 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024).

In *Prince v. Intercept*, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022), Judge Preska was pellucid ."The Court agrees with its colleagues that § 70-a's standard conflicts with the standards under Federal Rules 12 and 56. Accordingly, Defendants' request for costs and attorneys' fees is denied" found that while § 76-a's substantive fault standard applied, defendants were not entitled to costs and attorney fees under New York's anti-SLAPP law  because the law's requirement for fee awards conflicted with federal rules governing pleading and summary judgment. The court distinguished between substantive and procedural aspects of the anti-SLAPP framework, permitting application of the former while rejecting the latter.

The Supreme Court's reasoning in *Berk* directly supports this distinction. The Court rejected the argument that determining whether a Federal Rule is valid under the Rules Enabling Act requires asking whether the displaced state law is substantive: "We rejected that approach eight decades ago and decline to reconsider it now. . . . [T]he substantive nature of [a state] law,



or its substantive purpose, makes no difference." Thus, even if New York's anti-SLAPP fee-shifting provision serves a substantive purpose of protecting free speech, that purpose "makes no difference" when the provision conflicts with the Federal Rules' standards for dismissal.

Critically, Civil Rights Law § 70-a ties fee awards to a determination that an action was commenced "without a substantial basis in fact and law". the very "substantial basis" standard that conflicts with Federal Rules 12 and 56. As the *Prince* court recognized, this fee provision's "substantial basis requirement conflicted with federal procedural rules." Because Defendants seek fees through the standard motion to dismiss procedure—relying on the "substantial basis" determination—their request invokes precisely the procedural mechanism that federal courts have held inapplicable.

Defendants cite *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024), but that case is distinguishable. In *Bobulinski*, the court permitted fee-shifting only because it applied "the fee-shifting provision without using special motion procedures," treating § 70-a as creating a substantive right that could be pursued independently. Here, Defendants are not pursuing an independent cause of action; they seek fees as part of their motion to dismiss, which necessarily invokes the conflicting procedural mechanism.

Moreover, *Berk v. Choy* at p. 4 undermines the *Bobulinski* court's reasoning. The Supreme Court explicitly held that "a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under Erie's test." The Court rejected a defendant's attempt to "rewrite" a state law to avoid conflict with the Federal Rules, noting that such "creative license with the [state] law" cannot salvage procedural requirements that conflict with

 GS2LAW

27

federal standards. Here, Defendants similarly cannot rewrite New York's anti-SLAPP fee provisions to avoid the conflict with Rules 12 and 56.

### B. Even If the Fee Provisions Applied, This Action Has Substantial Basis

Even assuming the fee-shifting provisions could apply, Defendants' request fails because this action has a substantial basis in fact and law. As demonstrated throughout this memorandum, Plaintiff has adequately pleaded personal jurisdiction and stated a plausible claim for defamation. The factual allegations, that Defendants falsely accused Plaintiff of being paid by a foreign government, causing harm to his reputation and profession, are serious and well-founded.

Defendants argue that "the substantive standard for fees is automatically met by a SLAPP suit's failure to state a claim." But this argument presupposes that Plaintiff has failed to state a claim, a conclusion that is incorrect for the reasons set forth above. This is not a frivolous lawsuit designed to chill protected speech; it is a legitimate effort to vindicate Plaintiff's rights against defamation by a major international media organization.

### C. The Request Is Premature

Defendants' request is also premature. Attorneys' fees under the anti-SLAPP statute are available only after a determination that the action "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rts. L. § 70-a(1)(a). The Court has not yet made any determination on the merits of Plaintiff's claims. Defendants' motion to dismiss should be denied, and Plaintiff's claims should proceed to discovery.

 GS2LAW

**CONCLUSION**

For the foregoing reasons, Plaintiff Abraham Hamra respectfully requests that the Court deny

Defendants' motion to dismiss in its entirety and permit this action to proceed to discovery.


Dated:   Miami, FL

      February 19, 2026                                    Respectfully submitted,

                                          **GS2LAW PLLC**


                                          s/Robert Garson
                                          Robert Garson (RG 1521)
                                          20801 Biscayne Blvd, Suite 506
                                          (305) 780-5212
                                          rg@gs2law.com


                                          *Attorneys for Plaintiff Abraham*
                                          *Hamra*

GS2LAW