UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ABRAHAM HAMRA,

                                        Plaintiff,

            -against-

AL JAZEERA MEDIA NETWORK, et al.,

                                        Defendants.
----------------------------------------------------------------------X

For Online Publication Only

**FILED
CLERK**

7/20/2026 10:30 am

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**MEMORANDUM & ORDER**
25-cv-04774 (JMA) (AYS)

**AZRACK, United States District Judge:**

Plaintiff Abraham Hamra brings this defamation action against Defendants Al Jazeera Media Network and Al Jazeera International (USA) LLC, alleging that they defamed him in a video posted to the @aljazeeraenglish Instagram account.  (See Am. Compl., ECF No. 8.)  Before the Court is Defendants' motion to dismiss Hamra's Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 24 ("Mot.")).  Defendants also seek attorneys' fees pursuant to New York's anti-SLAPP law, New York Civil Rights Law § 70-a(1)(a).  (Id.)  Because the Court concludes it lacks personal jurisdiction over Defendants, the motion to dismiss is GRANTED.[1]

## I.      BACKGROUND

The facts set forth herein are taken from Hamra's Amended Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice.  See Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).

---

[1] As the Court dismisses Hamra's claim based on lack of personal jurisdiction, rather than on the merits, it need not reach Defendants' request for attorneys' fees and costs under New York's anti-SLAPP statute.

1

## A. **The Parties**

Defendant Al Jazeera Media Network ("AJMN") is a global media network headquartered in Doha, Qatar. (Am. Compl. ¶ 15.) AJMN "operates multiple channels, including Al Jazeera Arabic and Al Jazeera English, and distributes content worldwide via television, online platforms, and social media, including Instagram under the handle @aljazeeraenglish." (Id.) Defendant Al Jazeera International (USA) LLC ("AJI") is a U.S.-based subsidiary of AJMN that "serves as a hub for the network's U.S. operations." (Id. ¶ 16.) AJI is a Delaware limited liability company with its principal place of business in Washington, D.C. (Id. ¶ 7.) Hamra is a New York lawyer and "active social media user, maintaining an Instagram account (@abrahamhamra) with over 80,000 followers, where he shares content related to his heritage as a Syrian Jewish refugee, counters misinformation, and advocates against antisemitism." (Id. ¶¶ 12-14.)

## B. **The Allegedly Defamatory Instagram Video**

On August 25, 2025, the @aljazeeraenglish Instagram account posted a video with the caption: "Videos show social media influencers who were invited by #Israel's government to tour [Gaza Humanitarian Foundation ("#GHF")] aid sites in #Gaza, where the UN has declared a stage five famine." (Id. ¶ 53; see ECF No. 26-1 (the "August 25th Video").[2]) The August 25th Video features excerpts from the videos of six social media influencers, drawn from those influencers' public social media posts. The excerpts identify each of the six by name, title, and/or social media account handle. Hamra was not one of the six influencers whose posts were included in the video. However, one of the excerpts includes "an image of Plaintiff standing alongside another individual

---

[2] Defendants attach a copy of the video as a digital media exhibit to their motion to dismiss and note that the video is also available at https://www.instagram.com/reel/DNycFgNWJO7/. (ECF No. 26-1; Def. Mem. at 2.) Hamra has not objected to the Court's consideration of this video in deciding Defendants' Rule 12(b)(2) motion or 12(b)(6) motion. Moreover, Hamra repeatedly refers to and relies on the contents on the video throughout the Amended Complaint and does not challenge the authenticity of the copy submitted to the Court. The Court has viewed the video and deems it incorporated by reference into the Amended Complaint. See, e.g., Leroy v. Delta Air Lines, 2022 WL 12144507, at * 1 n.2 (amended summary order) (2d. Cir. Oct. 27, 2022) (deeming a document incorporated into the complaint where the plaintiff "reference[d] the [document] in her complaint . . . and d[id] not contest its accuracy or authenticity.").

near aid supplies." (Am. Compl. ¶ 54.) While the other individual in the image is identified by full name, title, and social media handle, Hamra is not identified in any of those ways. The image contains overlaid text that reads: "These influencers were reportedly paid to visit Gaza's GHF aid sites." (Id.)

Hamra alleges that, because his image is shown, the post falsely identifies him as "one of the 'influencers' who was 'reportedly paid' by the Israeli government, implying he accepted compensation to participate in a government-sponsored propaganda tour." (Id. ¶ 56.) He claims that this accusation is false: According to Hamra, he "has never received any payment, compensation, or financial incentive from the Israeli government or any affiliated entity for visiting aid sites in Gaza," and his visit "was undertaken independently, in his personal capacity, on his own dime, as an advocate for his community and to bear witness against misinformation." (Id. ¶¶ 56–57.) Hamra further alleges that the video constitutes "libel per se" because it accuses him of "violating [the Foreign Agents Registration Act ("FARA")] by acting as an unregistered foreign agent for Israel," an accusation that "injures [his] reputation and standing in his profession as a lawyer." (Id. ¶¶ 4, 65.)

C. **Procedural History**

Hamra commenced this action on August 27, 2025, against Defendants AJMN and AJI, (Compl., ECF No. 1), and filed an Amended Complaint on September 2, 2025, (Am. Compl.). Hamra alleges defamation and libel per se and seeks both damages and injunctive relief. (See id.) On February 27, 2026, Defendants filed the instant motion, asserting lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). (See ECF No. 25 ("Def. Mem."); ECF No. 28 ("Def. Reply").) Plaintiff opposes the motion. (ECF No. 27 ("Pl. Opp.").) For the reasons discussed below, the Court finds that it lacks personal jurisdiction and grants Defendants' motion.

## II.     DISCUSSION

### A. <u>Standard of Review</u>

At the pleading stage, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." <u>V&C Collection, LLC v. Guzzini Props. Ltd.</u>, 46 F.4th 127, 131 (2d Cir. 2022)). "A complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.'" <u>Troma Ent., Inc. v. Centennial Pictures Inc.</u>, 729 F.3d 215, 217 (2d Cir. 2013) (quoting <u>Penguin Grp. (USA) Inc. v. Am. Buddha</u>, 609 F.3d 30, 35 (2d Cir. 2010)).  However, a "prima facie showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." <u>Tamam v. Fransabank Sal</u>, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

In assessing whether this standard is met, "a district court may consider materials outside the pleadings." <u>Ziboukh v. Whaleco, Inc.</u>, 795 F. Supp. 3d 349, 369 (E.D.N.Y. 2025).  "[T]he court must 'construe the pleadings and any supporting materials in the light most favorable to the plaintiff.'" <u>Id.</u> (quoting <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 167 (2d Cir. 2013)).  But the court will neither "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 714 F.3d 659, 673 (2d Cir. 2013) (internal citations omitted); <u>see also</u> <u>Bracken v. MH Pillars Inc.</u>, No. 15-cv-7302, 2016 WL 7496735, at *2 (S.D.N.Y. Dec. 29, 2016) ("conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction[.]") (citation omitted)).

## B. <u>Legal Standard</u>

"There are two types of personal jurisdiction: specific and general." <u>Sonera Holding B.V. v. Çukurova Holding A.Ş.</u>, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam). A court may exercise specific personal jurisdiction in a suit where the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." <u>Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.</u>, 592 U.S. 351, 359 (2021) (cleaned up); <u>see</u> <u>Waldman v. Palestine Liberation Org.</u>, 835 F.3d 317, 331 (2d Cir. 2016) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.") (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).

Under New York Law, courts exercise general jurisdiction pursuant to C.P.L.R. Section 301, and specific jurisdiction pursuant to C.P.L.R. Section 302.[3] Sections 302(a)(2) and (a)(3) permit jurisdiction over torts committed within New York and those committed outside of New York that cause injury in the state. <u>See</u> C.P.L.R. §§ 302(a)(2), (3). However, those provisions "explicitly exempt causes of action for the tort of defamation from [their] scope." <u>Best Van Lines, Inc.</u>, 490 F.3d at 246. Notwithstanding those exemptions, "when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1)." <u>Id.</u> at 245–46.

"In order to evaluate whether personal jurisdiction exists pursuant to C.P.L.R. § 302(a)(1), [the court] must determine: (1) whether [the defendant] transacted any business in New York, and, if so, (2) whether there was an articulable nexus, or substantial relationship, between the [ ] conduct and the actions that occurred in New York." <u>Penachio v. Benedict</u>, 461 F. App'x 4, 5 (2d Cir.

---

[3] Although Hamra's Amended Complaint alleges both general and specific jurisdiction, Hamra abandons any claim based on general jurisdiction in his opposition brief. (<u>See</u> Am. Compl. ¶ 8 (alleging jurisdiction over Defendants is "proper under New York Civil Practice Law and Rules (CPLR) §§ 301 and 302")); Pl. Opp. at 10 (arguing only that "the Amended Complaint adequately pleads facts supporting jurisdiction under CPLR § 302(a)(1).")

2012) (citing Best Van Lines, Inc., 490 F.3d at 246). "Transacting business under § 302(a)(1) means 'purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Am. Girl, LLC v. Zembrka, 118 F.4th 271, 277 (2d Cir. 2024) (quoting Spetner v. Palestine Inv. Bank, 70 F.4th 632, 640 (2d Cir. 2023)), cert. denied, 145 S. Ct. 1130 (2025). "Under New York state law, a defendant's lack of physical presence in the state is not dispositive of whether he transacts business within the state, so long as the defendant's activities [within the state] were purposeful and there is a substantial relationship between the transaction and the claim[s] asserted." Mercante v. Tarzia, No. 24-cv-8471, 2025 WL 3073739, at *21 (E.D.N.Y. Nov. 4, 2025) (quoting Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007); see also Licci ex rel. Licci v. Lebanese Can. Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) ("A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'") (quoting Fischbarg, 9 N.Y.3d at 380). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Eades v. Kennedy, PC L. Offices, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).

In determining whether a defendant is purposefully transacting business in New York, courts look to "the totality of the defendant's activities within the forum." Best Van Lines, Inc., 490 F.3d at 246 (cleaned up); see Fischbarg, 9 N.Y.3d at 380 ("[I]t is the quality of the defendants' New York contacts that is the primary consideration"). "New York courts construe the 'transacting business' test more narrowly in defamation cases than in other contexts . . . [and] do not interpret 'transacting business' to include 'defamatory utterances' sent into New York state, unless the conduct also included 'something more.'" Penachio, 461 F. App'x at 5 (quoting Best Van Lines, Inc., 490 F.3d at 248–49). Therefore, in defamation cases, "the 'single act' of uttering a

defamation, no matter how loudly, is not a "transact[ion of] business" that may provide the foundation for personal jurisdiction. Best Van Lines, Inc., 490 F.3d at 248.

As for the second, "arising from" prong, to satisfy that requirement, "there must be an 'articulable nexus' or 'substantial relationship' between the business transaction[s in New York] and the claim asserted." Peterson v. Bank Markazi, 121 F.4th 983, 1004 (2d Cir. 2024), cert. denied sub nom. Clearstream Banking, S.A. v. Peterson, 145 S. Ct. 2819 (2025). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006) (citation omitted).

Notably, "New York courts have construed C.P.L.R. § 302(a)(1)'s 'arising from' requirement more narrowly in the defamation context because of the need to preserve First Amendment protections." Mercante, 2025 WL 3073739, at *8 (E.D.N.Y. Nov. 4, 2025) (citing Symmetra Pty Ltd. v. Hum. Facets, No. 12-cv-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013). Specifically, in defamation cases, "New York courts have [] concluded that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the '[defamation] claim did not arise from the defendants' specific business transactions in New York.'" Best Van Lines, Inc., 490 F.3d at 249–50 (2d Cir. 2007) (citation omitted); see also Symmetra Pty Ltd. v. Hum. Facets, LLC, No. 12-cv-8857, 2013 WL 2896876, at *6 (S.D.N.Y. June 13, 2013) (explaining that for defamation claims, "particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing [] that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue."

## C. <u>Discussion</u>

Defendants argue that the Amended Complaint must be dismissed for lack of personal jurisdiction because Hamra has failed to allege sufficient facts to meet either prong of CPLR Section 302(a)(1)'s standard. As explained below, the Court agrees.

### 1. Hamra fails to establish that Defendants "transact business" under C.P.L.R. § 302(a)(1)

First, Defendants argue that it is "'well established'" that "'the posting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York.'" (Def. Mem. at 15 (quoting <u>Mercante</u>, 2025 WL 3073739, at *9).) Therefore, Defendants argue that Hamra needs to, and fails to, allege conduct other than the allegedly defamatory video (which, they note, Hamra concedes was "created by AJMN," a Qatari entity) as a basis for his defamation cause of action. (<u>Id.</u> at 14–15.)

In response, Hamra argues that his allegations establish that Defendants "transact business" under C.P.L.R. § 302(a)(1), even under the stricter standard applicable to defamation claims. Hamra first contends that the Amended Complaint adequately alleges "that AJI is the alter ego of AJMN" such that AJI's contacts may be imputed to AJMN for personal jurisdiction purposes, and that AJI transacts business in New York by "operat[ing] content production and distribution activities that extend to New York audiences through various platforms." (Pl. Opp. at 9.) Hamra also argues that the Amended Complaint "alleges more than passive accessibility" of the defamatory video because it alleges that Defendants operate "an extensive distribution network targeting U.S. audiences, including New York residents"; distributed the video "in English through channels specifically designed to reach American audiences"; "specifically targeted" Hamra, a New York resident and attorney; and caused injury to him in New York. (Pl. Opp. at 11–12.)

The Court need not determine whether Hamra has alleged sufficient facts to support his alter-ego theory because, even assuming that all of AJI's contacts may be imputed to AJMN, those

8

contacts are insufficient to support the exercise of specific jurisdiction over either defendant. Accepting Hamra's allegations as true, they fail to establish that AJMN's (or AJI's) posting of the allegedly defamatory video "specifically and/or purposefully targeted New York rather than a nationwide audience." Mercante, 2025 WL 3073739, at *10. Hamra merely alleges that AJI conducts content production and distribution activities reaching U.S. audiences, including New Yorkers. That is clearly insufficient. See id. (holding that the fact that the defendant's website, on which the allegedly defamatory content was posted, was accessible in New York was insufficient to establish that the defendant "'purposefully avail[ed] himself of the privilege of conducting activities within New York'") (quoting Best Van Lines, Inc., 490 F.3d at 251–252)).

Hamra's conclusory assertions that Defendants operate "an extensive distribution network targeting U.S. audiences, including New York residents," and that they distributed the video "in English through channels specifically designed to reach American audiences" do not change this analysis. Although Hamra alleges that AJI is U.S.-based, the Amended Complaint does not identify any specific New York contacts of AJI, such an office or employees, nor does it allege any facts regarding a New York presence of AJI's distribution channels. Again, the mere fact that the video was accessible in New York and viewable by New York residents is insufficient. See, e.g., Knight-McConnell v. Cummins, No. 03-cv-5035, 2005 WL 1398590, at *3 (S.D.N.Y. Jun. 13, 2005) (noting that "[w]hen a case only involves online postings of information, rather than commercial transactions, it is unlikely that jurisdiction will be appropriate," and that "jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed"); Best Van Lines, 490 F.3d at 253 ("New York case law establishes that making defamatory statements outside of New York about New York residents does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers."). Nor do Hamra's allegations that Defendants targeted him, a

New York resident and attorney, and caused injury to him in New York, establish jurisdiction. See, e.g., Mercante, 2025 WL 3073739, at *10 (holding that "it is not enough to allege that [the defendant] intended an impact on New York or even that an impact was made.").

Moreover, even assuming that AJI was somehow involved in the creation of the video, Hamra also does not satisfy the "something more" requirement for defamation cases, which Hamra himself concedes requires that he allege that 'at least part of the defamatory content was created, researched, written, developed or produced in New York.'" (Pl. Opp. at 12.) The Amended Complaint does not include any such allegations. Indeed, Hamra does not allege that either AJI or AJMN conducted *any* activities related to the creation of the video in New York. Courts have rejected jurisdictional claims even where defendants had more substantial New York contacts. See, e.g., Trachtenberg v. Failedmessiah.com, 43 F. Supp. 3d 198, 204 (E.D.N.Y. 2014) (dismissing a defamation claim for lack of personal jurisdiction where the defendant relied on a New York source in creating the allegedly defamatory content because "[b]asing an article on information received out-of-state from a New York source is simply not the same as coming to New York to conduct research"); Prince v. Intercept, 634 F. Supp. 3d 114, 130 (S.D.N.Y. 2022) (dismissing a defamation claim where defendant's New York contacts, including sending research related to the disputed article to a New York-based colleague, were not sufficiently related to the creation of the allegedly defamatory content).

## 2. Hamra fails to establish that Defendants "transact business" under C.P.L.R. § 302(a)(1)

Defendants argue that, even if Hamra adequately alleged that Defendants transacted business in New York, he has failed to "plausibly allege that the defamation itself arose from the Defendants' specific business transactions in New York." In response, Hamra argues that because he alleges the allegedly defamatory statement caused injury to his reputation in New York, the

allegations "establish the required nexus between Defendants' conduct and New York." (Pl. Opp. at 12.)

Hamra misconstrues the "arising from" requirement, which requires a substantial relationship between Defendants' New York contacts and the alleged defamation. [4] See Peterson, 121 F.4th at 1004. Again, Hamra does not allege that the video was researched, written, developed, filmed, or produced in New York, nor does he allege that Defendants' New York contacts (if any) contributed to its creation. The mere fact that the video caused him injury in New York is insufficient. See, e.g., Prince, 634 F. Supp. 3d at 130 (finding that the plaintiff failed the second prong of Section 302(a)(1) because the defendant "did not travel to New York to conduct research, interview any person in New York, or rely on any sources in New York" in connection with the drafting of the allegedly defamatory article); Tannerite Sports, LLC v. NBCUniversal Media LLC, 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), aff'd sub nom, Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236 (2d Cir. 2017) (finding that the plaintiff failed the second prong of Section 302(a)(1) because the defendant's employees did not "interview[] any people in New York or rel[y] on any sources in connection with the creation or broadcast" of the allegedly defamatory report); Donner v. DER SPIEGEL Gmbh & Co. KG, 747 F. Supp. 3d 681, 692 (S.D.N.Y. 2024), aff'd, No. 24-cv-2654, 2025 WL 2985764 (2d Cir. Oct. 23, 2025) (finding that the plaintiff failed to show that the allegedly defamatory article arose from the defendants' business transactions in New York because he failed to allege that the creation of the article arose from the activities of defendants' New York office or that any of the defendants' New York employees were involved in the article's creation).

---

[4] The required analysis for the "arising from" prong is closely related to (and to some extends overlaps with) the first prong.

11

Because Hamra has not satisfied either prong of Section 302(a)(1), this Court does not have jurisdiction over his defamation claim against Defendants. [5]

### 3. The Court Denies Jurisdictional Discovery.

Hamra argues that he is entitled to jurisdictional discovery "to establish the full extent of Defendants' contacts with New York and their role in creating and distributing the defamatory content." (Pl. Opp. at 12.) He also contends that discovery is necessary to uncover "the relationship between AJI and AJMN," as it may reveal that AJI is involved with the @aljazeeraenglish Instagram account or that it played a role "in the creation, review, or publication of the defamatory content." (Id. at 10.) The Court denies Hamra's request because he has failed to plead facts sufficient to establish a prima facie showing of jurisdiction.

"'A district court has wide latitude to determine the scope of discovery, . . . and is typically within its discretion to deny jurisdictional discovery when the plaintiff [has] not made out a prima facie case for jurisdiction.'" Daou v. BLC Bank, S.A.L., 42 F.4th 120, 130 (2d Cir. 2022)) (quoting Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 401 (2d Cir. 2009)); see also Broidy Cap. Mgmt. LLC v. Benomar, 944 F.3d 436, 446 (2d Cir. 2019) ("[T]he district court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.") (cleaned up). "Jurisdictional discovery is warranted only 'where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction.'" Nixon v. Inquisitr Ltd., No. 20-cv-1819, 2021 WL 3667154, at *6 (E.D.N.Y. Aug. 17, 2021) (quoting Leon v. Shmuckler, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)); see also Mercante, 2025 WL 3073739, at *21 (explaining that jurisdictional discovery is "appropriately granted where a plaintiff's allegations

---

[5] Defendants also argue that maintaining this action would "violate Defendants' rights under the Due Process Clause." (Def. Mem. at 16.) Because the Court concludes that there is no statutory basis for personal jurisdiction under New York law, it need not reach the issue of constitutional due process.

make a 'sufficient start' toward establishing personal jurisdiction") (quoting <u>Uebler v. Boss Media, AB</u>, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005)).

Hamra has not made a sufficient showing to warrant jurisdictional discovery. As discussed, Hamra does not allege that the video was researched, written, developed or produced in New York, and he does not allege any basis for believing that discovery would show that it was. Instead, he merely speculates that discovery may reveal that "AJI, operating in the United States, played a role in the creation, research, or development of the content." (Pl. Opp. at 12.) Again, whether AJI played a role is irrelevant. The relevant question is whether Defendants had New York contacts—not merely U.S. contacts—related to the alleged defamation. Hamra does not identify anything that discovery would likely uncover that would allow him to plausibly allege such a connection. Therefore, jurisdictional discovery is not warranted because, even accepting Hamra's allegations as true, he has "not made a prima facie showing that the district court could properly exercise jurisdiction" over Defendants. <u>Daou v. BLC Bank, S.A.L.</u>, 42 F.4th 120 (2d Cir. 2022); see <u>Russo v. Sys. Integrators Inc.</u>, No. 217-cv-4317, 2018 WL 4100493, at *5 (E.D.N.Y. Aug. 28, 2018) (denying jurisdictional discovery where "[p]laintiff's only allegation that the Defendants had contacts with the State of New York" were alleged discriminatory telephone calls made to the plaintiff while the plaintiff was in New York and "Plaintiff has not provided the Court with any reason to infer that an opportunity to develop the record would be anything other than frivolous"); <u>G31000 N. Am., Inc. v. Paris</u>, No. 14-cv-3885, 2014 WL 6604790, at *1 (S.D.N.Y. Nov. 21, 2014) (denying jurisdictional discovery where "[p]laintiffs do not indicate what they would seek in jurisdictional discovery to cure their jurisdictional allegations").

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction under C.P.L.R. § 302(a)(1) is GRANTED. This is action

is dismissed without prejudice for lack of jurisdiction.  The Clerk of Court is directed to enter

judgment and close this case.

**SO ORDERED.**

Dated:   July 20, 2026
            Central Islip, New York

/s/ (JMA)
_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
